FILED

2006 Oct-12  PM 02:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

```
KATIE LOWERY, et al.,           }
                                }
      Plaintiffs,               }
                                }      CIVIL ACTION NO.
v.                              }      06-AR-1370-S
                                }
HONEYWELL INTERNATIONAL,        }
INC., et al.,                   }
                                }
      Defendants.               }
```

## MEMORANDUM OPINION

Before the court is the motion of Katie Lowery and her 417 fellow plaintiffs ("plaintiffs") to remand their above-entitled conjoined action to the Circuit Court of Jefferson County, Alabama, from which it was removed by one defendant, Alabama Power Company ("Alabama Power"), as a purported "mass action" under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1453 and 1332(d). Also before the court is plaintiffs' motion for reconsideration of the court's order of August 16, 2006, requiring them to state their opinions of the fair values of their respective 418 individual claims and whether or not an aggregation of their claims can reasonably be expected to reach the $5,000,000 in controversy necessary for a CAFA removal. For the reasons that follow, the court will grant both the motion for reconsideration and the motion to remand.

## I.    Introduction and Procedural History

Plaintiffs own and occupy numerous parcels of real property

situated in Jefferson County, Alabama.  On January 24, 2003, they filed a complaint against twelve named alleged polluters and multitudinous fictitious defendants in the Circuit Court of Jefferson County, Alabama, Bessemer Division, seeking indeterminate damages under Alabama law for trespass to person and realty; negligent, wanton or intentional injury; nuisance; and outrageous conduct.  There was no request, express or implied, for status as a class action.  The only excuse offered for conglomerating 418 separate, individual complaints into one suit was that the 418 claims share common questions of fact and law.  If any tort was committed by any defendant, it arose out of the discharge of pollutants into the air of Jefferson County.  There is nothing in the complaint which distinguishes between a plaintiff who may be claiming severe lung disease from one who may be claiming grit in her grits.  On February 15, 2005, the action was transferred to the Circuit Court of Jefferson County, Alabama, Birmingham Division for local reasons of venue.

On June 20, 2006, plaintiffs filed a third amended and recast complaint, adding as defendants, Alabama Power and Filler Products Company, Inc. ("Filler Products").  No new theories of liability or new acts of tortious conduct were added.  On July 17, 2006, Alabama Power removed the case to this court.  In its notice of removal it invoked 28 U.S.C. § 1446 and the removal provisions of CAFA, 28 U.S.C. §§ 1453 and 1332(d), asserting that

the action constitutes a "mass action", which, under 28 U.S.C. §
1332(d)(11)(B)(I), is removable.  On August 3, 2006, plaintiffs
filed the motion to remand now under consideration.  Although
plaintiffs initially withdrew their motion to remand, they
thereafter asked that it be reinstated, and the court reinstated
it.[1]

On August 11, 2006, defendants, Filler Products, Hanna Steel
Corporation, United States Steel Corporation, Butler
Manufacturing Company, Honeywell International, Inc., Fritz
Enterprises, Inc., CertainTeed Corporation, Vulcan Materials
Company, Baily-PVS Oxides, LLC, and W.J. Bullock Inc., purported
to join Alabama Power's notice of removal, although they deny
that they were required to do so.  They take the position that
the entire case was effectively removed by the filing of Alabama
Power's notice of removal.

## II.  Was the Case Successfully Removed by All or Any of the Defendants?

### A.  The Significance of the Date of Commencement

CAFA expressly provides that "[t]he amendment made by this
Act shall apply to any civil action **commenced** on or after the
date of enactment of this act."  (emphasis added).  The date of
CAFA's enactment was February 18, 2005.  According to CAFA, then,

---

[1]Alabama Power objects to the court's having allowed plaintiffs to
refile their motion to remand.  Even if the permission given was not a matter
within the court's discretion, the court's subject matter jurisdiction would
necessarily be addressed *sua sponte*.

to the extent this action was "commenced" before February 18, 2005, CAFA provided no removal opportunity.

Although plaintiffs filed their original complaint before CAFA's enactment, the amendment that added Alabama Power and Filler Products, and that precipitated this removal, came after CAFA's effective date.  This procedural fact creates two potentially dispositive removability questions: (1) did the filing of the third amended complaint "commence" a new suit for purposes of CAFA; and (2) if so, did the new suit, by retroactive effect, "commence" as to **all** defendants, or only as to Alabama Power and Filler Products.  Filler Products did not join the removal until more than thirty days after service of the third amended complaint, as required by 28 U.S.C. § 1446(b), and for aught appearing, it never filed a copy of a removal notice with the clerk of the state court as required by 28 U.S.C. § 1446(d).  Therefore, the purported joinder by Filler Products in the removal by Alabama Power presents a timeliness issue not shared by Alabama Power or any of the original defendants.

After the court heard oral argument on plaintiffs' motion to remand, the Eleventh Circuit followed the Fifth Circuit's decision in *Braud v. Transport Service Co. of Illinois*, 445 F.3d 801, 803 (5th Cir. 2006), and held that state law determines when an action is "commenced" for the purposes of CAFA.  *Tmesys, Inc. v. Eufaula Drugs, Inc.*, ____ F.3d ____ (11th Cir. Aug. 30, 2006).

In *Braud*, the Fifth Circuit had earlier explained that the date upon which an action is "commenced" in a state court is ascertained from that state's rules of procedure.  445 F.3d at 803.  Accordingly, this court must look to the Alabama Rules of Civil Procedure to find out when this action was "commenced." Alabama's rules provide that "[a] civil action is commenced by filing a complaint with the court."  Ala. R. Civ. P. 3(a).  The fact, then, is that unless there is a way for defendants to escape the clutches of this procedural rule, this action was "commenced" on January 24, 2003, when the original complaint was filed.

As the *Braud* court recognized, a distinct issue appears when a complaint is amended to add a defendant.  Following the Seventh Circuit's *dicta* from *Schillinger v. Union Pac. R.R.*, 425 F.3d 330 (7th Cir. 2005), the Fifth Circuit in *Braud* held that "**as to the new defendant**, removability is determined as of the date of receipt of service of the amended complaint, not as of the date on which the original suit was filed in state court."  445 F.3d at 805.  (emphasis added).  This language is pregnant with meaning.  It means that **as to Alabama Power and Filler Products** for the purposes of CAFA this action was not "commenced" until June 20, 2006, while as to the original defendants, it was "commenced" on January 24, 2003.  There is no basis for artificially applying the concept of "retroactivity" so as to

make June 20, 2006, the "commencement" date as to original
defendants against whom no new claims were made in the amended
complaint filed on June 20, 2006.  Accordingly, only Alabama
Power and Filler Products could, by filing notices of removal
within thirty days after June 20, 2006, and notifying the state
court clerk of the removal, avail themselves of the removal
provisions of CAFA.  This leaves for discussion only the question
of whether the procedural and substantive requisites for a CAFA
removal were met by Alabama Power and Filler Products.

All defendants strenuously argue that a CAFA removal by a
single defendant added after CAFA's enactment operates to effect
the removal of the entire action, including all of the parties
and all of the claims, and not just the claims asserted against
the defendant or defendants added after CAFA's effective date.
Defendants rely on (1) the statutory language of CAFA, (2)
Congressional intent, and (3) the Fifth Circuit's decision in
*Braud*.  The recent case of *Moniz v. Bayer A.G.*, ___ F. Supp. 2d
___, 2006 WL 2356008 (D. Mass., Aug. 14, 2006), was not urged
upon the court, that case having only come up on the Westlaw
screen after this removal, but for the reasons that follow, the
court remains unpersuaded, either by defendants' arguments, or by
*Moniz* and the authorities it cites.

Defendants first contend that the statutory language
supports their belief that a single, post-CAFA defendant can

remove the **entire** action.  In particular, defendants note that, with regard to a "class action", CAFA provides that "such **action** may be removed by any defendant without the consent of all defendants".  28 U.S.C. § 1453(b) (emphasis added).  Defendants' position in this regard is not entirely devoid of merit.  Under 28 U.S.C. § 1332(d)(11)(A), "a **mass action** shall be **deemed** to be a **class action** removable under paragraphs (2) through (10) if it otherwise meets the provisions of those paragraphs".  (emphasis added).  Accordingly, if defendants are correct when they say that this action constitutes a "mass action" under 28 U.S.C. § 1332(d)(11)(B)(I), Alabama Power's notice of removal arguably functions as a removal of the entire **"action"**, including **all** plaintiffs' claims against all defendants, sweeping into this court the claims against the pre-CAFA defendants who theoretically might not have wanted their case in a federal court, and the one post-CAFA defendant who, in this case, did not timely join in the removal.

Whether or not this action is, in fact and law, a "mass action" according to CAFA's definition of that term is not clear.  *See Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 682 (9th Cir. 2006) (discussing the confusion around the definition of "mass action", and noting that meshing existing jurisdictional and removal statutes with CAFA "mass action" provisions is "far from straightforward").  Regardless of how this Gordian knot will

ultimately be untied, the court rejects defendants' argument, because adopting it would render § 1332 internally inconsistent. In particular, § 1332(d)(11)(B)(I) provides that "[a]s used in subsection (A), the term 'mass action' means any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, **except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements** under subsection (a)." (emphasis added).[2]  If defendants' position were adopted, this enormous loose conglomeration of 418 individual damage suits suddenly became removable on June 20, 2006, under § 1333(d)(11)(A), even though this court clearly lacked subject-matter jurisdiction over the claims of the individual plaintiffs whose claims are worth less than $75,000. If there is internal inconsistency in CAFA, that inconsistency must be resolved by giving predominance to the language that limits jurisdiction, and not to language that would expand it. Although defendants' argument has colorable merit, the court

---

[2] The difficulty in meshing "mass action" with "class action" is illustrated by the fact that a "class action" is not removable under CAFA unless "the matter in controversy exceeds the sum or value of $5,000,000."  A "mass action" is "deemed" to be a "class action," if it has 100 plaintiffs, but, hypothetically, if 99 of the plaintiffs have claims of nominal value, their individual claims cannot be removed.  Does this mean that one claim out of 100 is removable if it is worth enough to bring the aggregation of claims to the magic figure of $5,000,000, or is it necessary that at least 100 plaintiffs each have a claim worth $75,000 and an aggregate value of $5,000,000?

respectfully rejects the idea that CAFA's language mandates complete removability of this case.  To the contrary, the court concludes that an "action" removable under § 1453(b), when used in connection with a "mass action" as defined by § 1332(d)(11), refers only to the removal of the claims of those plaintiffs over whom the federal court has subject-matter jurisdiction, namely, those that exceed $75,000 in value and that were commenced after February 18, 2005.

Not taking "no" for an answer, defendants next argue that in CAFA Congress intended to expand federal jurisdiction, and that the removal provisions as a matter of this new public policy are to be liberally construed in favor of removal.  Defendants rely on the following language from a Senate Judiciary Committee Report: "[b]y this provision, it is the Committee's intent to overrule case law developed by the federal courts requiring the consent of all parties, to the extent that such precedents might be applied to class actions subject to the expanded jurisdictional removal provisions . . . ."  Judiciary Committee Report on Class Action Fairness Act, S.REP. NO. 109-14 (1st Sess. 2005).  This argument falls short for several reasons.  First, the provision to which the Committee language refers is subsection 1453(b), and not subsection 1332(d), the subsection that defines "mass action," as distinct from "class action," the latter of which this case admittedly is not.  While a

consideration of legislative history is appropriate in instances where there is ambiguity in the statutory language, and while the word "action", as used in subsection 1453(b), is arguably ambiguous, the portion of the Committee Report that defendants rely upon does not resolve that possible ambiguity.[3]  More importantly, the Committee language does not support the position defendants put forward.  The sentence immediately preceding the one cited by defendants states that "[t]his revision to the removal rules will prevent a plaintiffs' attorney from recruiting a 'friendly' defendant . . . who could refuse to join in a removal to federal court and thereby thwart the legislative efforts of the primary corporate defendant to seek a federal forum in which to litigate the pending claims".  S.REP. No. 109-14.  This portion of the Committee Report is inapposite, because no party to the instant case claims that a failure to remove by any defendants other than Alabama Power precluded Alabama Power's removal.  And even if the Committee Report excerpt were relevant, it was issued ten days **after** CAFA was enacted, and by a small subset of the voting body of the Senate.  Such after-the-fact bolstering or "shaping" is a technique of statutory construction this court rejects.  This court shares the Ninth Circuit's recognition that this belated Committee Report has limited

---

[3]Speaking of ambiguity, there is other language in CAFA that is ambiguous enough to tempt post-hoc comment by Congresspersons and Senators with agendas.

persuasive value.  *See Abrego*, 443 F.3d at 683.  Furthermore, the
same Senate Report was relied upon by defendants in *Moniz*, in
which defendants, defending their CAFA removal, quoted the
following language from the Report, at page 43: "it is the intent
of the Committee that the named plaintiff(s) should bear the
burden of demonstrating that a case should be remanded to state
court".  The district court speaking in *Moniz* made short shrift
of this argument, quoting the Southern District of Texas as
follows:

> The rule that the proponent of federal jurisdiction
> bears the risk of non-persuasion has been around for a
> long time.  To change such a rule, Congress must enact
> a statute [to that effect].  A declaration by 13
> Senators will not serve.

*Werner v. KPMG LLP*, 445 F. Supp. 2d 688, 693 (S.D. Tex. 2006).

As their last gasp, defendants argue that the entire action
is removable because *Braud*, properly construed, requires it.
Despite the Fifth Circuit's clearly explaining that the action
became removable only "**as to the new defendant**", defendants point
out that the Fifth Circuit did actually find the entire action
there to have been properly removed.  Although defendants do not
misstate *Braud* in this regard, they err in asserting that "the
salient facts before the Court in *Braud* were not unlike those now
presented in this case."  The most salient, the most distinctive,
and the most material fact in this case is that it is a purported
"mass action" under 28 U.S.C. § 1332(d)(11)(B)(I), and not a

11

"class action" under 28 U.S.C. § 1332(d)(1)(B), as in *Braud*.   In a limiting *proviso* within the section of the statute defining "mass action," subject-matter jurisdiction exists "only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a)."   28 U.S.C. § 1332(d)(11)(B)(I).   There is no such jurisdictional limitation for individual plaintiffs in **class** actions.   Thus, this case presents an issue that the *Braud* court did not consider, and had no reason to consider, namely, the effect of § 1332(d)(11)(B)(I) on whether a "mass action" can be removed in its entirely by a post-CAFA defendant, just as if the action had been a "class action" under § 1332(d)(1)(B).   To apply *Braud* to a purported "mass action" would result in a multi-plaintiff action being entirely removable, overriding a clear lack of jurisdiction over the claims of particular plaintiffs having claims of less than $75,000 in value.[4]   Lastly, defendants forget that decisions by the Fifth Circuit are not binding on the Eleventh Circuit unless pre-1981.

Despite CAFA, federal courts are still courts of limited

---

[4]Moreover, under 28 U.S.C. § 1447(c), "[i]f at any time before final judgment it appears that the district court lacks subject-matter jurisdiction, the case shall be remanded.   An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of removal".   Adopting defendants' position would lead to the further anomalous result that a non-removing defendant in a mass action - who nevertheless has its claims removed by another defendant under CAFA - might be required to pay attorneys fees and costs associated with an improper removal even though that defendant did not submit to or join the notice of removal.

jurisdiction.  While CAFA admittedly broadens federal removal jurisdiction, it does not unanchor the federal courts from the basic principle of federalism that requires the construction of removal statutes against a removing defendant.

*Moniz* presented to the district court in Massachusetts a question of the CAFA removability of a case involving the question of the possible "relation back" of an amendment that made a substantive change in a theory, or that added new claims for relief after the enactment of CAFA.  First, *Moniz* was a "class action" and not a "mass action".  No new defendant was added as in the instant case.  The idea of "relation back" in a case in which a new defendant is added was not addressed in *Moniz* except as *dicta*, and is clearly not presented in the instant case.  The claims against these original defendants were the same on June 20, 2006, when Alabama Power and Filler Products were added, as they were on January 24, 2003, when the complaint was first filed.

**B.   Do Alabama Power and Filler Products Meet the CAFA Removal Requirements?**

The court having concluded that the CAFA removal provisions apply only to Alabama Power and Filler Products, and that the action against the original defendants cannot tag along, the court next examines whether the removal by the two post-CAFA parties was effective.  The court knows of no reason why Filler Products is excused from compliance with 28 U.S.C. § 1446(b) and

(d) which required it to remove, as Alabama Power did, within thirty days after it first received a paper alerting it to the fact of removability.  However, this failure by Filler Products becomes academic in light of the conclusion this court reaches that the substantive removal requisites for post-CAFA removal were not met either by Alabama Power or by Filler Products.

To repeat for the third time, in CAFA "jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a)."  28 U.S.C. § 1332(d)(11)(B)(I).  As in diversity removals generally, the amount in controversy must "exceed the sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332(a).  Nowhere in the original complaint, or in any subsequent amendment, does any plaintiff claim or otherwise designate a specific amount of damages, and all parties agree that few, if any, of the 418 plaintiffs have claims of more than $75,000 in value.  When a state court complaint is uncertain or silent on the amount being sought, the removing defendant under 28 U.S.C. § 1332 has the burden of proving the jurisdictional amount by a preponderance of the evidence.  *Leonard v. Enterprise Rent-A-Car*, 279 F3d 967, 972 (11th Cir. 2002).  Nothing in CAFA changes this rule.  A conclusory allegation in the notice of removal cannot supply the proof necessary to meet this burden.  The claim values in this case are highly speculative.  This court, based on its

experience and on the voluminous state court file, frankly
doubts, despite plaintiffs' counsel's bravado on behalf of some
of his unnamed clients, that any plaintiff's claim exceed $75,000
in value, much less that all claims aggregate in excess of
$5,000,000 in value, as required for a CAFA removal.  It is easy
to say that 418 combined claims have an aggregate value over
$5,000,000.  It is something else for a removing defendant to
prove it.

> **1.    Under CAFA, Do the Plaintiffs Bear the Burden of
> Establishing the Nonexistence of the Amount in
> Controversy?**

Does the fact that none of these named 418 plaintiffs
disclaim and disavow all intention or hope of recovering more
than $75,000, and that they are willing to engage in wishful
thinking that their total claims are worth $5,000,000, constitute
proof of the existence of the CAFA jurisdictional amount?
Defendants say that it does.  Plaintiffs say that it does not.
It comes down to which side has the burden of proof on this
subject, and how, and if, that burden can be met in a "mass
action" case.  The Eleventh Circuit has recently gotten ahead of
the district court who wrote *Moniz* by holding that "CAFA does not
change the traditional rule that the party seeking to remove the
case to federal court bears the burden of establishing federal
jurisdiction".  *Evans v. Walter Indus.*, 449 F.3d 1159, 1164 (11th
Cir. 2006).  In *Evans*, the Eleventh Circuit recognized an

exception only when there is an **express** exception, holding that "when a party seeks to avail itself of an express statutory **exception** to federal jurisdiction granted under CAFA . . . the party seeking remand bears the burden of proof with regard to that **exception**". *Id*. (emphasis added).  The instant case presents a question of first impression, namely, whether the § 1332(d)(11)(B)(I) *proviso* that "**except** that federal jurisdiction shall exist only over [the plaintiffs with $75,000 claims]" constitutes an "**exception** to federal jurisdiction granted under CAFA" as in *Evans* and thus for the first time places the burden of proving the **absence** of jurisdiction on plaintiffs.  (emphasis added).  Alabama Power contends that the burden of proof for establishing the absence of $75,000 in controversy, and thus obtaining a severance and remand, rests upon each plaintiff separately.  This argument is based on Alabama Power's reading of the *proviso* as an **exception** to federal jurisdiction and would take *Evans* into new and uncharted  territory.  Alabama Power misconstrues the meaning of the phrase "exception to federal jurisdiction".  As will be demonstrated, the *proviso* is not an "exception".

In *Evans*, the Eleventh Circuit was considering whether the defendant or the plaintiff bears the burden of proving CAFA's "local controversy exception" to jurisdiction after the base requisites of removal jurisdiction had already been met.  449

F.3d at 1161.  CAFA's local controversy **exception** provides:

>A district court **shall decline to exercise jurisdiction** under paragraph (2) -

(A)(I) over a class action in which-

>>(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

>>(II) at least 1 defendant-

>>>(aa) from whom significant relief is sought by members of the plaintiff class;

>>>(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

>>>(cc) who is a citizen of the State in which the action was originally filed; and

>>(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

>(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons;

28 U.S.C. § 1332(d).  (emphasis added).

The Eleventh Circuit concluded that because this is a provision that requires the court to decline an exercise of jurisdiction, even though jurisdiction otherwise exists under CAFA, plaintiffs there had the burden of establishing the requisites for the exception.  449 F.3d at 1164.

The $75,000 limitation in 28 U.S.C. § 1332(d)(11)(B)(I) is

quite unlike the local controversy exception of 28 U.S.C. §
1332(d)(4).  If there is an absence of $75,000 in controversy,
there is no jurisdiction *ab initio* and thus nothing to decline.
Federal jurisdiction simply does not exist over claims of less
than $75,000.  The "local controversy" exception describes a
situation in which jurisdiction exists but in which the court
must decline to exercise it.  Alabama Power's myopic focus on the
word "except" does not change this distinction.  The $75,000
*proviso* is not an "exception" to federal jurisdiction, but a
criterion for determining whether federal jurisdiction exists in
the first place.  In *Evans*, the Eleventh Circuit squarely
recognizes that the burden of establishing jurisdiction in a CAFA
case is on the party seeking removal, and the $75,000 amount in
controversy is a necessary element of federal jurisdiction, upon
which the removing defendant has always had and still has the
burden of proof.  449 F.3d at 1164.

The same analysis appertains as to the $5,000,000 required
for CAFA jurisdiction, although this aggregation concept is
contained in a subsection of CAFA separate from the individual
$75,000 limitation in "mass action" cases.

> **2.  Has Alabama Power Met Its Burden of Establishing
>     $75,000 in Controversy for Individual Plaintiffs
>     and/or $5,000,000 in Controversy in Total?**

While insisting that each plaintiff has the burden of
proving the absence of $75,000 in controversy in order to obtain

a remand of his claim, Alabama Power takes the fall-back position
that if it bears the burden of establishing $75,000 in
controversy, that burden only applies as to one plaintiff, and
that it has met that burden by virtue of counsel's in-court
admission, a concession that, according to Alabama Power,
reimposes upon plaintiffs the burden of establishing which of
them expect to recover less than $75,000 and thus be entitled to
a severance and remand.

Alabama Power relies upon the following colloquy that
occurred in open court:

> THE COURT: Lloyd [Lloyd Gathings, plaintiffs' counsel],
> you and Bill [Bill Thomason, plaintiffs' other
> counsel] seriously think that one or more of your 400
> plaintiffs is going to have a shot at more than
> $75,000?
>
> MR. GATHINGS: One or more, Judge.  All of them don't.

Alabama Power's argument loses steam quickly because, even
if Mr. Gathings' conclusory statement suggests that under such
circumstances the amount-in-controversy requirement is met as to
at least one plaintiff, there is no authority for the proposition
that the burden thereupon shifts to plaintiffs to establish that
the requirement is **not** met as to all other plaintiffs.[5]  Mr.

---

[5]Moreover, the severance and remand that will ultimately occur if the
current removal is allowed when it becomes apparent that some of the 418
plaintiffs have claims of less than $75,000 is something to contemplate
fearfully.  There is no question about the lack of jurisdiction over "mass
action" plaintiffs who only seek less than $75,000.  On Alabama Power's
theory, the court can envision keeping the case of one of 418 plaintiffs, and
remanding 417, after two years of discovery.  Judicial economy was not totally
ignored in CAFA.  If the court could, at this juncture, determine which
plaintiffs have claims less than $75,000 in value as against Alabama Power,

Gathings never mentioned the name of a single plaintiff, much less linked any plaintiff with a particular *ad damnum*.  The damages situation remains fluid and amorphous.

Mr. Gathings' in-court statement cannot satisfy Alabama Power's burden of establishing the jurisdictional amount as to some plaintiff or plaintiffs.  The statement only reflects Mr. Gathings' belief that at least one of his clients has a claim exceeding $75,000 in value, but the voicing of his opinion cannot establish for which plaintiff or plaintiffs Mr. Gathings holds this belief, or on what his belief is based.  Moreover, in response to the court's order requiring plaintiffs to provide information concerning the values of their individual claims, plaintiffs forthrightly explained that they do not know which, if any, have claims that may reasonably be expected to exceed $75,000 in value.  Mr. Gathings did not specify, because he could not, which plaintiffs have claims whose values exceed $75,000. This is not his fault.  The court can well understand his reluctance to place a cap on individual claims when there remains a lot of discovery to be done on the subject of the damages of various and sundry types possibly suffered by widely divergent plaintiffs.

Defendants' hopeful conjecture based on Alabama jury

---

and remand only them, doing so would create a bifurcation that would be productive only of duplicate effort and unknown problems, compounded by the certain fact that either the state court proceeding or the proceeding in this court would end first and impact the other.

verdicts in cases that may have some similarity to, but are not exactly like, this case do not suffice to remove the obligation of the removing defendants to prove that the jurisdictional amount exists in a case in which no plaintiff has formally claimed a particular sum, much less a sum more than $75,000.  For the fourth and final time, 28 U.S.C. § 1332(d)(11)(B)(I) provides that "jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a)."  The statute does **not** say that "jurisdiction shall exist over all plaintiffs in a mass action if at least one of them satisfies the jurisdictional amount requirement."  Even if Mr. Gathings' statement purported to concede jurisdiction under the foregoing hypothetical version of the statute, it does not do so under the statute as actually written.  As already overemphasized, it is Alabama Power's burden to establish the jurisdiction of this court over **all** claims, and Mr. Gathings' in-court statement did not relieve Alabama Power of its burden.

In the two cases proffered by Alabama Power, plaintiffs sued over alleged pollution and were awarded more than $75,000 by an Alabama court.  Such evidence, although it is quite often cited in the notices of removal in diversity cases as proof of the value of a removed claim, is not enough to establish jurisdiction in a "mass action" removal.  First, the cited cases are not

sufficiently similar to this case to prove by a preponderance of the evidence that any particular of these 418 plaintiffs has a legitimate expectation of recovering in excess of $75,000. Second, the cited cases do not tend to prove **which**, if any, of plaintiffs' claims exceeds $75,000 in value.  Third, the cited cases cannot logically be thought to establish by a preponderance of the evidence that **all** of plaintiffs' claims meet the amount-in-controversy requirement.  Mr. Gathings' statement indicates no more than his hope that some of his clients will recover more than $75,000.

Because Alabama Power has not met its burden of establishing jurisdiction over a single named plaintiff, much less over all plaintiffs, this court cannot keep any part of this case.  It cannot logically remand only the claims of those plaintiffs whose cases are worth less than $75,000 when there is no basis for distinguishing one plaintiff from another.  The court cannot merely guess, and cannot retain jurisdiction over the whole case against Alabama Power during the period in which the parties try to ascertain which, if any, of the 418 claims is worth more than or less than $75,000.  If the court kept the case temporarily, it would be forced by 28 U.S.C. § 1447(c) eventually to remand most of the claims because it will surely appear after discovery that they are worth less than $75,000.

## III. Alternative Serious Jurisdictional Deficiencies

There are alternative reasons why this case must be, or should, in the interest of justice, be remanded.

First, "the term 'mass action' shall not include any civil action in which . . . all of the claims in the action arise from an event or occurrence in the State in which the action was filed, and that allegedly resulted in injuries in that State. . . ." 28 U.S.C. § 1332(d)(11)(B)(ii)(I).  Although in the case before the court the facts pertinent to an application of this statutory provision have not been fully developed, it facially appears that the language, if and when applied, will prevent the action from constituting a "mass action", and will destroy CAFA removability.

Second, according to 28 U.S.C. § 1332(d)(11)(A), in order for a "mass action" to be removable, it must meet the general requirements of a "class action" as defined in 28 U.S.C. § 1332(d)(2) through (10).  The instant action falls short of these requirements.  The court need not tick off the various failures to meet the "class action" definition.  They require evaluation only if the court is incorrect as to other fatal jurisdictional defects already dismissed.

Third, if this action qualifies as a "mass action," the court is required to decline jurisdiction **if** greater than two-thirds of the plaintiffs are citizens of Alabama, **if** at least one

defendant from whom significant relief is sought is a citizen of
Alabama, and **if** the principal injuries relate to conduct that
occurred in the state in Alabama.  28 U.S.C. §
1332(d)(4)(A)(i)(I,II,III).  If these statutory provisions are
met, a remand becomes mandatory.  The fact that under *Evans* the
burden of proof on these issues is on plaintiffs, and that in
this case plaintiffs have not attempted to affirmatively meet
their burden, does not mean that these local controversy facts do
not facially appear, or that defendants cannot satisfy their
burden after filing a renewed motion to remand.  The court cannot
find a limitation in CAFA or in *Evans* on the time within which a
plaintiff can raise a subject-matter jurisdictional issue such as
this one.

### IV.  Plaintiffs' Motion for Reconsideration of the Court's Order of August 16, 2006

Plaintiffs have requested reconsideration of the August 16,
2006 order requiring them to provide the names and addresses of
all plaintiffs whose claims can reasonably be expected to exceed
$75,000 in value, together with a one-paragraph explanation as to
why particular claims are worth more than $75,000.  As previously
discussed in another context, plaintiffs explain that they do not
have this information, and ask the court either to set aside the
order or to accept their enigmatic answer as a sufficient
explanation for their failure to provide the requested
information.  Believing that plaintiffs cannot be expected to

know the values of their claims at this juncture, the court will grant their motion.

**V.     Conclusion**

Because this purported "mass action" was commenced against the original defendants before the enactment of CAFA, those defendants cannot avail themselves of CAFA, and the court accordingly must remand this action as to them.  Because the two defendants who were added after CAFA's enactment have failed to establish that this court has subject-matter jurisdiction over the claims of any particular plaintiff, much less over all plaintiffs, the court will also remand the action as to the two defendants added after the enactment of CAFA.

A separate order of remand will be entered.

DONE this 12th day of October, 2006.


WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

25