FILED

2006 Oct-24  PM 04:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

KATIE LOWERY, et al.,            }
                                 }
      Plaintiffs,                }
                                 }      CIVIL ACTION NO.
v.                               }      06-AR-1370-S
                                 }
HONEYWELL INTERNATIONAL,         }
INC., et al.,                    }
                                 }
      Defendants.                }

## MEMORANDUM OPINION

Before the court is the motion of Katie Lowery and her 418 fellow plaintiffs ("plaintiffs") to remand their above-entitled conjoined action to the Circuit Court of Jefferson County, Alabama, from which it was removed by one defendant, Alabama Power Company ("Alabama Power"), as a purported "mass action" under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1453 and 1332(d). Also before the court is plaintiffs' motion for reconsideration of the court's order of August 16, 2006, requiring them to state their opinions of the fair values of their respective 419 individual claims and whether or not an aggregation of their claims can reasonably be expected to reach the $5,000,000 in controversy necessary for a CAFA removal. For the reasons that follow, the court will grant both the motion for reconsideration and the motion to remand.

## I.    Introduction and Procedural History

Plaintiffs own and occupy numerous parcels of real property

situated in Jefferson County, Alabama.  On January 24, 2003, Ms.
Lowery and eight other individuals filed a complaint against
eleven named alleged polluters and multitudinous fictitious
defendants in the Circuit Court of Jefferson County, Alabama,
Bessemer Division, seeking damages under Alabama law for trespass
to person and realty; negligent, wanton or intentional injury;
nuisance; and outrageous conduct.  If any tort was committed by
any defendant, it arose out of the discharge of pollutants into
the air of Jefferson County.  There is nothing in the original
complaint to distinguish between a plaintiff who may be claiming
severe lung disease from one who may be claiming grit in her
grits.  The original complaint included the following demand:

> [E]ach Plaintiff demands judgment against said
> Defendants in the sum of One Million Two Hundred Fifty
> Thousand Dollars and costs.

On October 31, 2005, after the case had been transferred
from the Bessemer Division to the Birmingham Division,
plaintiffs filed an amended and recast complaint, in which
533 individuals were named as plaintiffs and an additional
defendant was named, and the preposterous demand for
$1,250,000 for each plaintiff was eliminated and replaced
with the following enigma:

> [T]he plaintiffs demand judgment against said
> defendants in an amount of compensatory and
> punitive damages to be determined by a jury in
> excess of the jurisdictional minimum of this
> [state] Court, together with interest from the
> date of injury, and the costs of this proceeding.

2

There was no request, express or implied, for status as a
class action in the original or any subsequent amended
complaint.  The only excuse offered for conglomerating the
separate, individual complaints into one suit was that the
claims shared common questions of fact and law.  On March
16, 2006, plaintiffs filed a second amended and recast
complaint, which named 417 plaintiffs and in which the
indeterminate demand for judgment and damages was not
changed.

On June 20, 2006, plaintiffs filed a third amended and
recast complaint, naming 419 plaintiffs and adding as
defendants, Alabama Power and Filler Products Company, Inc.
("Filler Products").  No new theories of liability or new
acts of tortious conduct were added, and plaintiffs' demand
for an unspecified amount in damages was identical to that
contained in their first and second amended and recast
complaints.  On July 17, 2006, Alabama Power removed the
case to this court.  In its supplemental notice of removal
it invoked 28 U.S.C. § 1446 and the removal provisions of
CAFA, 28 U.S.C. §§ 1453 and 1332(d), asserting that the
action constitutes a "mass action", which, under 28 U.S.C. §
1332(d)(11)(B)(i), is removable.  Paragraph 3 of the
supplement to the notice of removal began with this
sentence: "Plaintiffs did not specify their damages in the

3

complaint".  On August 3, 2006, plaintiffs filed the motion
to remand now under consideration.  Although plaintiffs
initially withdrew their motion to remand, they thereafter
asked that it be reinstated, and the court reinstated it.[1]

On August 11, 2006, defendants, Filler Products, Hanna
Steel Corporation, United States Steel Corporation, Butler
Manufacturing Company, Honeywell International, Inc., Fritz
Enterprises, Inc., CertainTeed Corporation, Vulcan Materials
Company, Baily-PVS Oxides, LLC, and W.J. Bullock Inc.,
purported to join Alabama Power's notice of removal,
although they deny that they were required to do so.  They
take the position that the entire case was effectively
removed by the filing of Alabama Power's notice of removal.

## II.  Was the Case Successfully Removed by All or Any of the Defendants?

### A.    The Significance of the Date of Commencement

CAFA expressly provides that "[t]he amendment made by
this Act shall apply to any civil action **commenced** on or
after the date of enactment of this act."  (emphasis added).
The date of CAFA's enactment was February 18, 2005.
According to CAFA, then, to the extent this action was
"commenced" before February 18, 2005, CAFA provided no

---

[1]Alabama Power objects to the court's having allowed plaintiffs to refile their motion to remand.  Even if the permission given was not a matter within the court's discretion, the court's subject matter jurisdiction would necessarily be addressed *sua sponte*.

removal opportunity.

Although plaintiffs filed their original complaint before CAFA's enactment, the amendment that added Alabama Power and Filler Products, and that precipitated this removal, came after CAFA's effective date.  This procedural fact creates two potentially dispositive removability questions: (1) did the filing of the third amended complaint "commence" a new suit for purposes of CAFA; and (2) if so, did the new suit, by retroactive effect, "commence" as to **all** defendants, or only as to Alabama Power and Filler Products.  Filler Products did not join the removal until more than thirty days after service of the third amended complaint, as required by 28 U.S.C. § 1446(b), and for aught appearing, it never filed a copy of a removal notice with the clerk of the state court as required by 28 U.S.C. § 1446(d).  Therefore, the purported joinder by Filler Products in the removal by Alabama Power presents a timeliness issue not shared by Alabama Power or any of the original defendants.

After the court heard oral argument on plaintiffs' motion to remand, the Eleventh Circuit followed the Fifth Circuit's decision in *Braud v. Transport Service Co. of Illinois*, 445 F.3d 801, 803 (5th Cir. 2006), and held that state law determines when an action is "commenced" for the

purposes of CAFA.  *Tmesys, Inc. v. Eufaula Drugs, Inc.*, 462
F.3d 1317, 1319 (11th Cir. 2006).  In *Braud*, the Fifth
Circuit had earlier explained that the date upon which an
action is "commenced" in a state court is ascertained from
that state's rules of procedure.  445 F.3d at 803.
Accordingly, this court must look to the Alabama Rules of
Civil Procedure to find out when this action was
"commenced."  Alabama's rules provide that "[a] civil action
is commenced by filing a complaint with the court."  Ala. R.
Civ. P. 3(a).  The fact, then, is that unless there is a way
for defendants to escape the clutches of this procedural
rule, this action was "commenced" on January 24, 2003, when
the original complaint was filed.

As the *Braud* court recognized, a distinct issue appears
when a complaint is amended to add a defendant.  Following
the Seventh Circuit's *dicta* from *Schillinger v. Union Pac.
R.R.*, 425 F.3d 330 (7th Cir. 2005), the Fifth Circuit in
*Braud* held that "**as to the new defendant**, removability is
determined as of the date of receipt of service of the
amended complaint, not as of the date on which the original
suit was filed in state court."  445 F.3d at 805.  (emphasis
added).  This language is pregnant with meaning.  It means
that **as to Alabama Power and Filler Products** for the
purposes of CAFA this action was not "commenced" until June

6

20, 2006, while as to the original defendants, it was
"commenced" on January 24, 2003.  There is no basis for
artificially applying the concept of "retroactivity" so as
to make June 20, 2006, the "commencement" date as to
original defendants against whom no new claims were made in
the amended complaint filed on June 20, 2006.  Accordingly,
only Alabama Power and Filler Products could, by filing
notices of removal within thirty days after June 20, 2006,
and notifying the state court clerk of the removal, avail
themselves of the removal provisions of CAFA.  This leaves
for discussion only the question of whether the procedural
and substantive requisites for a CAFA removal were met by
Alabama Power and Filler Products.

All defendants strenuously argue that a CAFA removal by
a single defendant added after CAFA's enactment operates to
effect the removal of the entire action, including all of
the parties and all of the claims, and not just the claims
asserted against the defendant or defendants added after
CAFA's effective date.  Defendants rely on (1) the statutory
language of CAFA, (2) Congressional intent, and (3) the
Fifth Circuit's decision in *Braud*.  The recent case of *Moniz
v. Bayer A.G.*, ___ F. Supp. 2d ___, 2006 WL 2356008 (D.
Mass., Aug. 14, 2006), was not urged upon the court, that
case having only come up on the Westlaw screen after this

removal, but for the reasons that follow, the court remains
unpersuaded, either by defendants' arguments, or by *Moniz*
and the authorities it cites.

Defendants first contend that the statutory language
supports their belief that a single, post-CAFA defendant can
remove the **entire** action.  In particular, defendants note
that, with regard to a "class action", CAFA provides that
"such **action** may be removed by any defendant without the
consent of all defendants".  28 U.S.C. § 1453(b) (emphasis
added).  Defendants' position in this regard is not entirely
devoid of merit.  Under 28 U.S.C. § 1332(d)(11)(A), "a **mass
action** shall be **deemed** to be a **class action** removable under
paragraphs (2) through (10) if it otherwise meets the
provisions of those paragraphs".  (emphasis added).
Accordingly, if defendants are correct when they say that
this action constitutes a "mass action" under 28 U.S.C. §
1332(d)(11)(B)(i), Alabama Power's notice of removal
arguably functions as a removal of the entire "**action**",
including **all** plaintiffs' claims against all defendants,
sweeping into this court the claims against the pre-CAFA
defendants who theoretically might not have wanted their
case in a federal court, and the one post-CAFA defendant
who, in this case, did not timely join in the removal.

Whether or not this action is, in fact and law, a "mass

8

action" according to CAFA's definition of that term is not
clear.  *See Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d
676, 682 (9th Cir. 2006) (discussing the confusion around
the definition of "mass action", and noting that meshing
existing jurisdictional and removal statutes with CAFA "mass
action" provisions is "far from straightforward").
Regardless of how this Gordian knot will ultimately be
untied, the court rejects defendants' argument, because
adopting it would render § 1332 internally inconsistent.  In
particular, § 1332(d)(11)(B)(i) provides that "[a]s used in
subsection (A), the term 'mass action' means any civil
action . . . in which monetary relief claims of 100 or more
persons are proposed to be tried jointly on the ground that
the plaintiffs' claims involve common questions of law or
fact, **except that jurisdiction shall exist only over those
plaintiffs whose claims in a mass action satisfy the
jurisdictional amount requirements** under subsection (a)."
(emphasis added).[2]  If defendants' position were adopted,
this enormous loose conglomeration of 419 individual damage

---

[2]The difficulty in meshing "mass action" with "class action" is
illustrated by the fact that a "class action" is not removable under CAFA
unless "the matter in controversy exceeds the sum or value of $5,000,000."  A
"mass action" is "deemed" to be a "class action," if it has 100 plaintiffs,
but, hypothetically, if 99 of the plaintiffs have claims of nominal value,
their individual claims cannot be removed.  Does this mean that one claim out
of 100 is removable if it is worth enough to bring the aggregation of claims
to the magic figure of $5,000,000, or is it necessary that at least 100
plaintiffs each have a claim worth $75,000 and an aggregate value of
$5,000,000?

suits suddenly became removable on June 20, 2006, under §
1333(d)(11)(A), even though this court clearly lacked
subject-matter jurisdiction over the claims of the
individual plaintiffs whose claims are worth less than
$75,000.  If there is internal inconsistency in CAFA, that
inconsistency must be resolved by giving predominance to the
language that limits jurisdiction, and not to language that
would expand it.  Although defendants' argument has
colorable merit, the court respectfully rejects the idea
that CAFA's language mandates complete removability of this
case.  To the contrary, the court concludes that an "action"
removable under § 1453(b), when used in connection with a
"mass action" as defined by § 1332(d)(11), refers only to
the removal of the claims of those plaintiffs over whom the
federal court has subject-matter jurisdiction, namely, those
that exceed $75,000 in value and that were commenced after
February 18, 2005.

       Not taking "no" for an answer, defendants next argue
that in CAFA Congress intended to expand federal
jurisdiction, and that the removal provisions as a matter of
this new public policy are to be liberally construed in
favor of removal.  Defendants rely on the following language
from a Senate Judiciary Committee Report: "[b]y this
provision, it is the Committee's intent to overrule case law

10

developed by the federal courts requiring the consent of all
parties, to the extent that such precedents might be applied
to class actions subject to the expanded jurisdictional
removal provisions . . . ." Judiciary Committee Report on
Class Action Fairness Act, S.REP. No. 109-14 (1st Sess.
2005). This argument falls short for several reasons.
First, the provision to which the Committee language refers
is subsection 1453(b), and not subsection 1332(d), the
subsection that defines "mass action," as distinct from
"class action," the latter of which this case admittedly is
not. While a consideration of legislative history is
appropriate in instances where there is ambiguity in the
statutory language, and while the word "action", as used in
subsection 1453(b), is arguably ambiguous, the portion of
the Committee Report that defendants rely upon does not
resolve that possible ambiguity.[3] More importantly, the
Committee language does not support the position defendants
put forward. The sentence immediately preceding the one
cited by defendants states that "[t]his revision to the
removal rules will prevent a plaintiffs' attorney from
recruiting a 'friendly' defendant . . . who could refuse to
join in a removal to federal court and thereby thwart the

---

[3]Speaking of ambiguity, there is other language in CAFA that is
ambiguous enough to tempt post-hoc comment by Congresspersons and Senators
with agendas.

11

legislative efforts of the primary corporate defendant to seek a federal forum in which to litigate the pending claims". S.Rep. No. 109-14.  This portion of the Committee Report is inapposite, because no party to the instant case claims that a failure to remove by any defendants other than Alabama Power precluded Alabama Power's removal.  And even if the Committee Report excerpt were relevant, it was issued ten days **after** CAFA was enacted, and by a small subset of the voting body of the Senate.  Such after-the-fact bolstering or "shaping" is a technique of statutory construction this court rejects.  This court shares the Ninth Circuit's recognition that this belated Committee Report has limited persuasive value.  *See Abrego*, 443 F.3d at 683.  Furthermore, the same Senate Report was relied upon by defendants in *Moniz*, in which defendants, defending their CAFA removal, quoted the following language from the Report, at page 43: "it is the intent of the Committee that the named plaintiff(s) should bear the burden of demonstrating that a case should be remanded to state court".  The district court speaking in *Moniz* made short shrift of this argument, quoting the Southern District of Texas as follows:

> The rule that the proponent of federal jurisdiction bears the risk of non-persuasion has been around for a long time.  To change such a rule, Congress must enact a statute [to that effect].  A declaration by 13 Senators will not serve.

*Werner v. KPMG LLP*, 445 F. Supp. 2d 688, 693 (S.D. Tex. 2006).

As their last gasp, defendants argue that the entire action is removable because *Braud*, properly construed, requires it.  Despite the Fifth Circuit's clearly explaining that the action became removable only "**as to the new defendant**", defendants point out that the Fifth Circuit did actually find the entire action there to have been properly removed.  Although defendants do not misstate *Braud* in this regard, they err in asserting that "the salient facts before the Court in *Braud* were not unlike those now presented in this case."  The most salient, the most distinctive, and the most material fact in this case is that it is a purported "mass action" under 28 U.S.C. § 1332(d)(11)(B)(i), and not a "class action" under 28 U.S.C. § 1332(d)(1)(B), as in *Braud*. In accordance with a limiting *proviso* within the section of the statute defining "mass action," subject-matter jurisdiction exists "only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a)."  28 U.S.C. § 1332(d)(11)(B)(i).  There is no such jurisdictional limitation for individual plaintiffs in **class** actions. Thus, this case presents an issue that the *Braud* court did not consider, and had no reason to consider, namely, the

13

effect of § 1332(d)(11)(B)(i) on whether a "mass action" can
be removed in its entirely by a post-CAFA defendant, just as
if the action had been a "class action" under §
1332(d)(1)(B).  To apply *Braud* to a purported "mass action"
would result in a multi-plaintiff action being entirely
removable, overriding a clear lack of jurisdiction over the
claims of particular plaintiffs having claims of less than
$75,000 in value.[4]  Lastly, defendants forget that decisions
by the Fifth Circuit are not binding on the Eleventh Circuit
unless pre-1981.

Despite CAFA, federal courts are still courts of
limited jurisdiction.  While CAFA admittedly broadens
federal removal jurisdiction, it does not unanchor the
federal courts from the basic principle of federalism that
requires the construction of removal statutes against a
removing defendant.

*Moniz* presented to the district court in Massachusetts
a question of the CAFA removability of a case involving the
question of the possible "relation back" of an amendment

---

[4]Moreover, under 28 U.S.C. § 1447(c), "[i]f at any time before final
judgment it appears that the district court lacks subject-matter jurisdiction,
the case shall be remanded.  An order remanding the case may require payment
of just costs and any actual expenses, including attorney fees, incurred as a
result of removal".  Adopting defendants' position would lead to the further
anomalous result that a non-removing defendant in a mass action - who
nevertheless has its claims removed by another defendant under CAFA - might be
required to pay attorneys fees and costs associated with an improper removal
even though that defendant did not submit to or join the notice of removal.

14

that made a substantive change in a theory, or that added
new claims for relief after the enactment of CAFA.  First,
*Moniz* was a "class action" and not a "mass action".  No new
defendant was added as in the instant case.  The idea of
"relation back" in a case in which a new defendant is added
was not addressed in *Moniz* except as *dicta*, and is clearly
not presented in the instant case.  The claims against these
original defendants were the same on June 20, 2006, when
Alabama Power and Filler Products were added, as they were
on January 24, 2003, when the complaint was first filed.

**B.   Do Alabama Power and Filler Products Meet the CAFA
Removal Requirements?**

The court having concluded that the CAFA removal
provisions apply only to Alabama Power and Filler Products,
and that the action against the original defendants cannot
tag along, the court next examines whether the removal by
the two post-CAFA parties was effective.  The court knows of
no reason why Filler Products is excused from compliance
with 28 U.S.C. § 1446(b) and (d) which required it to
remove, as Alabama Power did, within thirty days after it
first received a paper alerting it to the fact of
removability.  However, this failure by Filler Products
becomes academic in light of the conclusion this court
reaches that the substantive removal requisites for post-
CAFA removal were not met either by Alabama Power or by

15

Filler Products.

To repeat for the third time, in CAFA "jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a)." 28 U.S.C. § 1332(d)(11)(B)(i). As in diversity removals generally, the amount in controversy must "exceed the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). The original nine plaintiffs specified in their original complaint that each demanded $1,250,000 plus costs. However, nowhere in any subsequent amendment does any plaintiff claim or otherwise designate a specific amount of damages, and Alabama Power was not added as a defendant until the third amended and recast complaint was filed. Alabama Power apparently argues that, because CAFA became effective before plaintiffs filed their first amended and recast complaint – *i.e.,* when the complaint contained an express demand of more than $75,000 in damages for each plaintiff – the jurisdictional amount requirement of 28 U.S.C. § 1332(d)(11)(B)(i) has been met. Alabama Power's argument is unconvincing because the action had not "commenced" as to it when the original complaint was still in effect. The action did not so "commence" as to Alabama Power until the third amended and recast complaint was filed, and by that time

16

plaintiffs had eliminated any specification of damages being sought.  It is of no consequence that CAFA became effective when the astronomical amount in controversy was still specified in the complaint, because such amount was **not** specified when the action became even arguably removable under CAFA.  During the time the original complaint was still operative, not only had the action not yet "commenced" as to Alabama Power, but neither had the 28 U.S.C. § 1332(d)(11)(B)(i) requirement that a "mass action" must involve the monetary relief claims of at least 100 persons been met.

By the time this action could possibly have become a "mass action" removable under CAFA, the complaint in effect was silent as to the amount in controversy.  And when a state court complaint is uncertain or silent on the amount being sought, the removing defendant under 28 U.S.C. § 1332 has the burden of proving the jurisdictional amount by a preponderance of the evidence.  *Leonard v. Enterprise Rent-A-Car*, 279 F3d 967, 972 (11th Cir. 2002).  Nothing in CAFA changes this rule.  A conclusory allegation in the notice of removal cannot supply the proof necessary to meet this burden.  In spite of the rather unrealistically ambitious amount-in-controversy figure specified in the original complaint, the values of the claims contained in the third

amended and recast complaint are highly speculative.  This
court, based on its experience and on the voluminous state
court file, frankly doubts, despite plaintiffs' counsel's
bravado on behalf of some of his unnamed clients, that any
plaintiff's claim exceeds $75,000 in value, much less that
all claims aggregate in excess of $5,000,000 in value, as
required for a CAFA removal.  It is easy to hope that 419
combined claims have an aggregate value over $5,000,000.  It
is something else for a removing defendant to prove it.

> **1.   Under CAFA, Do the Plaintiffs Bear the Burden
> of Establishing the Nonexistence of the
> Amount in Controversy?**

Does the fact that none of these named 419 plaintiffs
disclaim and disavow all intention or hope of recovering
more than $75,000, and that they are willing to engage in
wishful thinking that their total claims are worth
$5,000,000, constitute proof of the existence of the CAFA
jurisdictional amount?  Defendants say that it does.
Plaintiffs say that it does not.  It comes down to which
side has the burden of proof on this subject, and how, and
if, that burden can be met in a "mass action" case.  The
Eleventh Circuit has recently gotten ahead of the district
court who wrote *Moniz* by holding that "**CAFA does not change
the traditional rule that the party seeking to remove the
case to federal court bears the burden of establishing**

18

**federal jurisdiction**". *Evans v. Walter Indus.*, 449 F.3d 1159, 1164 (11th Cir. 2006). (emphasis added). In *Evans*, the Eleventh Circuit recognized an exception only when there is an **express** exception, holding that "when a party seeks to avail itself of an express statutory **exception** to federal jurisdiction granted under CAFA . . . the party seeking remand bears the burden of proof with regard to that **exception**". *Id.* (emphasis added). The instant case presents a question of first impression, namely, whether the § 1332(d)(11)(B)(i) *proviso* that "**except** that federal jurisdiction shall exist only over [the plaintiffs with $75,000 claims]" constitutes an "**exception** to federal jurisdiction granted under CAFA" as in *Evans* and thus for the first time places the burden of proving the **absence** of jurisdiction on plaintiffs. (emphasis added). Alabama Power contends that the burden of proof for establishing the absence of $75,000 in controversy, and thus obtaining a severance and remand, rests upon each plaintiff separately. This argument is based on Alabama Power's reading of the *proviso* as an **exception** to federal jurisdiction and would take *Evans* into new and uncharted territory. Alabama Power misconstrues the meaning of the phrase "exception to federal jurisdiction". As will be demonstrated, the *proviso* is not an "exception".

19

In *Evans*, the Eleventh Circuit was considering whether the defendant or the plaintiff bears the burden of proving CAFA's "local controversy exception" to jurisdiction after the base requisites of removal jurisdiction had already been met.  449 F.3d at 1161.  CAFA's local controversy **exception** provides:

> A district court **shall decline to exercise jurisdiction** under paragraph (2) -
>
> (A)(I) over a class action in which–
>
>> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>>
>> (II) at least 1 defendant–
>>
>>> (aa) from whom significant relief is sought by members of the plaintiff class;
>>>
>>> (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
>>>
>>> (cc) who is a citizen of the State in which the action was originally filed; and
>>
>> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
>
> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons;

28 U.S.C. § 1332(d).  (emphasis added).

The Eleventh Circuit concluded that because this is a

provision that requires the court to decline an exercise of jurisdiction, even though jurisdiction otherwise exists under CAFA, plaintiffs there had the burden of establishing the requisites for the exception.  449 F.3d at 1164.

The $75,000 limitation in 28 U.S.C. § 1332(d)(11)(B)(i) is quite unlike the local controversy exception of 28 U.S.C. § 1332(d)(4).  If there is an absence of $75,000 in controversy, there is no jurisdiction *ab initio* and thus nothing to decline.  Federal jurisdiction simply does not exist over claims of less than $75,000.  The "local controversy" exception describes a situation in which jurisdiction exists but in which the court must decline to exercise it.  Alabama Power's myopic focus on the word "except" does not change this distinction.  The $75,000 *proviso* is not an "exception" to federal jurisdiction, but a criterion for determining whether federal jurisdiction exists in the first place.  In *Evans*, the Eleventh Circuit squarely recognized that the burden of establishing jurisdiction in a CAFA case is on the party seeking removal, and the $75,000 amount in controversy is a necessary element of federal jurisdiction, upon which the removing defendant has always had and still has the burden of proof.  449 F.3d at 1164.

The same analysis appertains as to the $5,000,000

required for CAFA jurisdiction, although this aggregation concept is contained in a subsection of CAFA separate from the individual $75,000 limitation in "mass action" cases.

> **2.   Has Alabama Power Met Its Burden of Establishing $75,000 in Controversy for Individual Plaintiffs and/or $5,000,000 in Controversy in Total?**

While insisting that each plaintiff has the burden of proving the absence of $75,000 in controversy in order to obtain a remand of his claim, Alabama Power takes the fall-back position that if it bears the burden of establishing $75,000 in controversy, that burden only applies as to one plaintiff, and that it has met that burden by virtue of counsel's in-court admission, a concession that, according to Alabama Power, reimposes upon plaintiffs the burden of establishing which of them expect to recover less than $75,000 and thus be entitled to a severance and remand.

Alabama Power relies upon the following colloquy that occurred in open court:

> THE COURT: Lloyd [Lloyd Gathings, plaintiffs' counsel], you and  Bill [Bill Thomason, plaintiffs' other counsel] seriously think that one or more of your 400 plaintiffs is going to have a shot at more than $75,000?

> MR. GATHINGS: One or more, Judge.  All of them don't.

Alabama Power's argument loses steam quickly because, even if Mr. Gathings' conclusory statement suggests that

under such circumstances the amount-in-controversy
requirement is met as to at least one plaintiff, there is no
authority for the proposition that the burden thereupon
shifts to plaintiffs to establish that the requirement is
**not** met as to all other plaintiffs.[5]  Mr. Gathings never
mentioned the name of a single plaintiff, much less linked
any plaintiff with a particular *ad damnum*.  The damages
situation remains fluid and amorphous.

Mr. Gathings' in-court statement cannot satisfy Alabama
Power's burden of establishing the jurisdictional amount as
to some plaintiff or plaintiffs.  The statement only
reflects Mr. Gathings' belief that at least one of his
clients has a claim exceeding $75,000 in value, but the
voicing of his opinion cannot establish for which plaintiff
or plaintiffs Mr. Gathings holds this belief, or on what his
belief is based.  Moreover, in response to the court's order
requiring plaintiffs to provide information concerning the
values of their individual claims, plaintiffs forthrightly

---

[5]Moreover, the severance and remand that will ultimately occur if the
current removal is allowed when it becomes apparent that some of the 419
plaintiffs have claims of less than $75,000 is something to contemplate
fearfully.  There is no question about the lack of jurisdiction over "mass
action" plaintiffs who only seek less than $75,000.  On Alabama Power's
theory, the court can envision keeping the case of one of 419 plaintiffs, and
remanding 418, after two years of discovery.  Judicial economy was not totally
ignored in CAFA.  If the court could, at this juncture, determine which
plaintiffs have claims less than $75,000 in value as against Alabama Power,
and remand only them, doing so would create a bifurcation that would be
productive only of duplicate effort and unknown problems, compounded by the
certain fact that either the state court proceeding or the proceeding in this
court would end first and impact the other.

explained that they do not know which, if any, have claims that may reasonably be expected to exceed $75,000 in value. Mr. Gathings did not specify, because he could not, which plaintiffs have claims whose values exceed $75,000. This is not his fault. The court can well understand his reluctance to place a cap on individual claims when there remains a lot of discovery to be done on the subject of the damages of various and sundry types possibly suffered by widely divergent plaintiffs.

Defendants' hopeful conjecture based on Alabama jury verdicts in cases that may have some similarity to, but are not closely similar, this case do not suffice to remove the obligation of the removing defendants to prove that the jurisdictional amount exists in a case in which no plaintiff has formally claimed a particular sum, much less a sum more than $75,000. For the fourth and final time, 28 U.S.C. § 1332(d)(11)(B)(i) provides that "jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a)." The statute does **not** say that "jurisdiction shall exist over all plaintiffs in a mass action if at least one of them satisfies the jurisdictional amount requirement." Even if Mr. Gathings' statement purported to concede jurisdiction under the foregoing

24

hypothetical version of the statute, it does not do so under the statute as actually written.  As already overemphasized, it is Alabama Power's burden to establish the jurisdiction of this court over **all** claims, and Mr. Gathings' in-court statement did not relieve Alabama Power of its burden.

In the two cases proffered by Alabama Power, plaintiffs sued over alleged pollution and recovered more than $75,000 in an Alabama court.  Such anecdotal evidence, although it is quite often cited in notices of removal in diversity cases as proof of the value of a removed claim, is not enough to establish jurisdiction in a "mass action" removal. First, the cited cases are not sufficiently similar to this case to prove by a preponderance of the evidence that any particular one of these 419 plaintiffs has a legitimate expectation of recovering in excess of $75,000.  Second, the cited cases do not tend to prove **which**, if any, of plaintiffs' claims exceeds $75,000 in value.  Third, the cited cases cannot logically be thought to establish by a preponderance of the evidence that **all** of plaintiffs' claims meet the amount-in-controversy requirement.  Mr. Gathings' statement indicates no more than his fond hope that some of his clients will recover more than $75,000.  Conspicuously, Alabama Power offers no citation to a case filed by 100 or more individual plaintiffs whose combined claims are held

together only because of alleged common questions of law and fact, and in which an Alabama court allowed a total recovery in excess of $5,000,000.

Because Alabama Power has not met its burden of establishing jurisdiction over a single named plaintiff, much less over all plaintiffs, this court cannot keep any part of this case. It cannot logically remand only the claims of those plaintiffs whose cases are worth less than $75,000 when there is no basis for distinguishing one plaintiff from another. The court cannot merely guess, and cannot retain jurisdiction over the whole case against Alabama Power or any other defendant during the period in which the parties try to ascertain which, if any, of the 419 claims is worth more than $75,000. If the court kept the case temporarily, it would eventually be forced by 28 U.S.C. § 1447(c) to remand most of the claims because it will surely appear after further discovery that they are worth less than $75,000.

## III. Alternative Serious Jurisdictional Deficiencies

There are alternative reasons why this case must be, or should, in the interest of justice, be remanded.

First, "the term 'mass action' shall not include any civil action in which . . . all of the claims in the action arise from an event or occurrence in the State in which the

action was filed, and that allegedly resulted in injuries in that State. . . ." 28 U.S.C. § 1332(d)(11)(B)(ii)(I). Although in the case before the court the facts pertinent to an application of this statutory provision have not been fully developed, it facially appears that the language, if and when applied, will prevent the action from constituting a "mass action", and will destroy CAFA removability.

Second, according to 28 U.S.C. § 1332(d)(11)(A), in order for a "mass action" to be removable, it must meet the general requirements of a "class action" as defined in 28 U.S.C. § 1332(d)(2) through (10). The instant action falls short of these requirements. The court need not tick off the various failures to meet the "class action" definition. They require evaluation only if the court is incorrect as to other fatal jurisdictional defects already dismissed.

Third, if this action qualifies as a "mass action," the court is required to decline jurisdiction **if** greater than two-thirds of the plaintiffs are citizens of Alabama, **if** at least one defendant from whom significant relief is sought is a citizen of Alabama, and **if** the principal injuries relate to conduct that occurred in the state in Alabama. 28 U.S.C. § 1332(d)(4)(A)(i)(I,II,III). If these statutory provisions are met, a remand becomes mandatory. The fact that under *Evans* the burden of proof on these issues is on

27

plaintiffs, and that in this case plaintiffs have not attempted to affirmatively meet their burden, does not mean that these local controversy facts do not facially appear, or that plaintiffs cannot satisfy their burden after filing a renewed motion to remand.  The court cannot find a limitation in CAFA or in *Evans* on the time within which a plaintiff can raise a subject-matter jurisdictional issue such as this one.

**IV.  Plaintiffs' Motion for Reconsideration of the Court's Order of August 16, 2006**

Plaintiffs have requested reconsideration of the August 16, 2006 order requiring them to provide the names and addresses of all plaintiffs whose claims can reasonably be expected to exceed $75,000 in value, together with a one-paragraph explanation as to why particular claims are worth more than $75,000.  As previously discussed in another context, plaintiffs explain that they do not have this information, and ask the court either to set aside the order or to accept their enigmatic answer as a sufficient explanation for their failure to provide the requested information.  Believing that plaintiffs cannot be expected to know the values of their claims at this juncture, the court will grant their motion.

**V.  Conclusion**

Because this purported "mass action" was commenced

28

against the original defendants before the enactment of
CAFA, those defendants cannot avail themselves of CAFA, and
the court accordingly must remand this action as to them.
Because the two defendants who were added after CAFA's
enactment have failed to establish that this court has
subject-matter jurisdiction over the claims of any
particular plaintiff, much less over all plaintiffs, the
court will also remand the action as to the two defendants
added after the enactment of CAFA.

A separate order of remand will be entered.

DONE this 12th day of October, 2006.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE